**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GREGORY JORDAN, | ) | |
| | ) | Civil Action No. 11 - 815 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| SERGEANT MATTHEWS, | ) | |
| | ) | ECF No. 43 |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on the Motion for Summary Judgment filed by Defendant Sergeant Matthews (hereinafter "Defendant") (ECF No. 43). After careful consideration of the submissions of both parties, Defendant's Motion for Summary Judgment will be granted for the reasons that follow.

**I. Procedural Background**

Plaintiff Gregory Jordan (hereinafter "Plaintiff") is a former Pennsylvania state inmate. He initiated this matter in June 2011 pursuant to 42 U.S.C. § 1983 (ECF No. 1) and his Complaint was docketed on July 1, 2011 (ECF No. 5). He later filed an Amended Complaint on November 16, 2011 (ECF No. 27). Defendant filed a Partial Motion to Dismiss (ECF No. 28) and a Partial Answer to Plaintiff's Amended Complaint (ECF No. 30). The Partial Motion to Dismiss was granted in part and denied as moot in part on March 8, 2012.[1] (ECF No. 38.)

---

[1] The Amended Complaint contained two counts: (1) a First Amendment retaliation claim, and (2) a conspiracy claim. The Court granted Defendant's Partial Motion to Dismiss to the extent it sought dismissal of Plaintiff's conspiracy claim and denied the remainder of the motion as moot because Plaintiff stated he was not pursuing those claims to which the motion addressed – *i.e.*, due process and verbal threats and/or harassment. As

1

Thereafter, Defendant filed the instant Motion for Summary Judgment (ECF No. 43), a Brief in Support thereof (ECF No. 44), and a Concise Statement of Material Facts ("CSMF") (ECF No. 45). Plaintiff filed a Response in Opposition to Defendant's Motion (ECF No. 64) along with a Responsive CSMF (ECF No. 63), to which Defendant opted by Reply (ECF Nos. 65, 67). Plaintiff was then granted leave to amend his responses and filed an Amended Response in Opposition to Summary Judgment (ECF No. 70), an Amended Responsive CSMF (ECF No. 69), and a Declaration in Opposition to Summary Judgment (ECF No. 71). Defendant thereafter filed a Response to Plaintiff's Amended CSMF (ECF No. 73).

## II. Plaintiff's Allegations and Factual Background

While incarcerated at the State Correctional Institution at Greene ("SCI-Greene") on May 8, 2009, Plaintiff filed a grievance regarding the loss of his outside clearance and employment and increase in custody level. (Plaintiff's Amended Complaint, ECF No. 27 at ¶ 9; Exhibit A1 to Plaintiff's original Complaint, Grievance #272034, ECF No. 5-1.) Plaintiff alleges that he spoke with Defendant about his dilemma regarding the issues in his grievance and Defendant told him that the reason his clearance would not be restored was due to the fact that he was black. (ECF No. 27 at ¶ 12.) Plaintiff reported Defendant's comment in his grievance appeal dated June 5, 2009, and Plaintiff claims that it was shortly thereafter that Defendant started to harass, threaten and retaliate against him. (ECF No. 27 at ¶ 13; Plaintiff's Amended CSMF, ECF No. 69 at 3.) He alleges that Defendant wrongly denied him commissary on June 22, 2009, and, after he reported the incident to Lt. Harvilla, he was confronted by Defendant who threatened and called Plaintiff a "bitch" and a "rat." (ECF No. 27 at ¶¶ 14-21.) He also alleges that, on August 8,

---

such, the only claim remaining is Plaintiff's claim that Defendant issued him a fabricated misconduct report in retaliation for grievances and complaints he had filed.

2009, and while in the presence of Lt. Armstrong, Defendant called him an "asshole" and threatened to issue him a fabricated misconduct; then, Defendant continued to harass him between September and November by making monkey sounds in front of Plaintiff's cell door. (Id. at ¶¶ 23-25.)  When Plaintiff later informed his unit manager of the problems he was experiencing with Defendant, the unit manager allegedly told Plaintiff that he was paranoid. (Id. at ¶ 27.)  When Plaintiff spoke to his counselor about the situation, he was told to just avoid Defendant. (Id. at ¶ 28.)

On June 9, 2010, Defendant issued Plaintiff misconduct number 231145 charging him with using abusive language, refusing to obey an order, unauthorized use of phone, and presence in an unauthorized area. (Exhibit A to Defendant's CSMF, ECF No. 45-1 at 3.)  Plaintiff maintains that he was falsely accused by Defendant in retaliation for including him within his grievance appeal the previous year and that the security video footage would have proved his innocence. (ECF No. 27 at ¶¶ 30, 33-34, 36.)  Defendant allegedly arranged for him to be placed in pre-hearing detention pending the resolution of the misconduct despite failing to abide by Pennsylvania DOC policy and report a reason for the placement. (ECF No. 27 at ¶¶ 31-32.)  At his misconduct hearing on June 14, 2010, Plaintiff was found guilty of refusing to obey an order and sanctioned to 30 days disciplinary custody time by the hearing examiner. (ECF No. 45-1 at 4.)  The hearing examiner dismissed the remaining charges. (Id.)  Plaintiff claims that the hearing examiner refused to view the security video footage and refused to call his witness, Officer Eagle, who was listed on the misconduct report as being present. (ECF No. 69 at 2.)  He

also claims that Defendant's fabricated misconduct was the reason he was denied parole.[2] (ECF No. 69 at 4.)

On June 11, 2010, Plaintiff wrote to the Office of Professional Responsibility ("OPR") regarding Defendant's harassing and retaliatory behavior. (ECF No. 27 at ¶ 29; ECF No. 5-7.) An investigation into Plaintiff's allegations was conducted by James C. Barnacle, Director of Special Investigations and Intelligence. (Exhibit D to Plaintiff's Amended Responsive CSMF, Memorandum of Interview of Lt. Armstrong, ECF No. 69-4 at 2.) According to Lt. Armstrong and Captain Haywood, they remembered an incident that occurred sometime during the summer of 2009,[3] when Defendant wanted to issue Plaintiff a fabricated misconduct in order to have him "locked up." (Exhibit C to Plaintiff's Amended Responsive CSMF, Statement from Captain Haywood, ECF Nos. 69-3; 69-4.) Specifically, Lt. Armstrong was asked to speak to Defendant regarding personal issues he was having with Plaintiff. (ECF No. 69-4.) When Lt. Armstrong asked what the problem was, Defendant stated that he wanted to have Plaintiff taken to the RHU, and, when asked why, Defendant stated that he kept asking an officer about going to the commissary so he was going to charge Plaintiff with refusing to obey an order. (Id.) When Plaintiff reported to the office to be interviewed, Defendant became visibly upset and started yelling and pointing at Plaintiff. (Id.) After Plaintiff left, Defendant told Lt. Armstrong that he was going to write the misconduct in a way that would get Plaintiff "locked up." (Id.) Because of this, Lt. Armstrong called for Captain Haywood. (ECF No. 69-3.) Defendant told Captain

---

[2] Defendant submitted evidence that Plaintiff was denied parole on April 15, 2010, a month before the misconduct was issued on June 9, 2010. (Exhibit D to Defendant's Response to Plaintiff's Amended CSMF, ECF No. 73-1 at 6.) However, it is unknown whether Plaintiff was denied parole any time following the incident.

[3] While both Lt. Armstrong and Captain Haywood could not recall the specific day the incident took place that summer, the Court assumes that the day in question was August 8, 2009. This was the day that Plaintiff was summoned to the office by Lt. Armstrong and confronted by Defendant during which time Defendant allegedly called Plaintiff an "asshole" and threatened to "write him up even [if] he had to lie." (ECF No. 27 at ¶ 24.)

Haywood that he was going to write Plaintiff a misconduct for threatening and using abusive language. (Id.) When asked if it was true, Defendant stated that was what he was going to write in the misconduct. (Id.) Captain Haywood instructed Defendant that he was not to write a misconduct that was not true. (Id.) When he later interviewed Officer Chaney, Captain Haywood was informed that Plaintiff did not make any threats or use abusive language during the incident in question with Defendant on August 8, 2009. (Id.; Exhibit B to Plaintiff's Amended Responsive CSMF, Statement from Officer Chaney, ECF No. 69-2.) No misconduct was ever issued and Plaintiff was instructed to avoid Defendant. (ECF No. 69-3.)

Pursuant to the investigation conducted by Director Barnacle of Special Investigations and Intelligence, Officer Eagle was interviewed about the misconduct that was issued to Plaintiff by Defendant on June 9, 2010. (Exhibit C to Defendant's Response to Plaintiff's Amended CSMF, ECF No. 73-1 at 2-4.) Officer Eagle recalled that when he entered the pod on June 9, 2010, Plaintiff was on the phone and he heard Defendant give a last order to get off the phone. (Id.) Plaintiff then got off the phone and said something foul but did not recall exactly what he said. (Id.) After that, he escorted Plaintiff to his cell and secured the door. (Id.)

### III. Standard of Review

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of

material fact. National State Bank v. Federal Reserve Bank of New York, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting Anderson, 477 U.S. at 251-52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

## IV. Discussion

Plaintiff's sole remaining claim is that Defendant issued him a fabricated misconduct on June 9, 2010, in retaliation for including Defendant within his grievance appeal filed a year earlier and for filing complaints concerning Defendant's harassing behavior.

### A. Retaliation

It is well settled that retaliation for the exercise of a constitutionally protected activity is itself a violation of rights secured by the Constitution, which is actionable under section 1983.

Rauser v. Horn, 341 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) that the conduct in which he engaged was constitutionally protected; (2) that he suffered "adverse action" at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Rauser, 241 F.3d at 333 (adopting Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). "Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner." Jones v. Beard, No. 07-951, 2009 WL 1913302, at *3 (W.D. Pa. July 2, 2009) (citing Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996)) (other citations omitted).

### 1. Constitutionally Protected Activity

With respect to the first factor, the Third Circuit Court of Appeals has held that an allegation of being falsely charged with misconduct in retaliation for filing complaints against an officer implicates conduct protected by the First Amendment. Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (citing Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002); Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000); Babcock v. White, 102 F.3d 267, 275-76 (7th Cir. 1996)). Consequently, Plaintiff has satisfied this first prong.

### 2. Adverse Action

With respect to the second factor, an adverse action is one "sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). Again, the Third Circuit has stated that several months in disciplinary confinement would

deter a reasonably firm prisoner from exercising his First Amendment rights. Mitchell, 318 F.3d at 530. Consequently, Plaintiff has satisfied this second prong.

### 3. Causation

The third factor requires there be a causal link between the exercise of the constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333. This may be established by evidence of "(1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory adverse action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *See* Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) (holding that the temporal proximity between the protected conduct and the alleged retaliatory action must be "unusually suggestive" before the court will infer a causal link) (citing Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997)). For purposes of the Motion for Summary Judgment, Defendant assumes, *arguendo*, that Plaintiff can present sufficient evidence of a causal link so as to create an issue of fact as to this element. The Court will not address whether Plaintiff has, in fact, satisfied this third element because, even assuming he has, Defendant is entitled to summary judgment for the reasons that follow.

### 4. Burden shifting

Once all three criteria are met, the burden then shifts to the defendants "to prove by a preponderance of the evidence that it would have taken the same disciplinary action even in the absence of the protected activity." Rauser, 241 F.3d at 333. This means that "prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Id. at 334 (incorporating Turner v. Safley, 482 U.S. 78, 89 (1987)). Defendant argues that Plaintiff's

retaliation claim fails because Plaintiff would have been issued the misconduct for reasons reasonably related to legitimate penological interests even had he not filed grievances and complaints.

The filing of a prison disciplinary report is not actionable under 42 U.S.C. § 1983 as prohibited "retaliation" unless the report is, in fact, false. In other words, a finding of guilt of the underlying misconduct charge, supported by evidence, satisfies a defendant's burden of showing that he would have brought the misconduct charge for reasons reasonably related to legitimate penological interests even if plaintiff had not engaged in a protected activity. *See* Harris-Debardelaben v. Johnson, 121 F.3d 708 (6th Cir. 1997) (Table), *reported in full text*, 1997 WL 434357 (6th Cir. July 31, 1997); Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir. 1998), *cert. denied*, 119 S. Ct. 246 (1998); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (a finding of guilty of a prison rule violation based on some evidence "essentially checkmates [the] retaliation claim."), *cert. denied*, 115 S. Ct. 2584 (1995). *See also* Carter v. McGrady, 292 F.3d 152 (3d Cir. 2002) (noting that even if prison officials were motivated by animus to jailhouse lawyers, there was sufficient evidence of the plaintiff's misconduct offenses to conclude that the misconducts would have issued notwithstanding his jailhouse lawyering); Allah v. Al-Hafeez, 208 F. Supp. 2d 520 (E.D. Pa. 2002). As a matter of law, "maintaining order and security in the prison system" is a "legitimate penological interest." Fraise v. Terhune, 283 F.3d 506, 516 (3d Cir. 2002) (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 350-51 (1987)). Moreover, "courts should afford deference to decisions made by prison officials who possess the necessary expertise," Rauser, 241 F.3d at 334, and the Third Circuit has instructed that deference is especially appropriate when a regulation implicates prison security, Fraise, 283 F.3d at 516.

Here, Plaintiff received the misconduct in question charging him with using abusive language, refusing to obey an order, unauthorized use of phone, and presence in an unauthorized area. (ECF No. 45-1 at 3.) According to Defendant's version of events in the misconduct report, an inmate by the name of Stevenson asked "for his cell door" and Defendant stated "not right now." (Id.) Plaintiff then asked the same question to which Defendant responded, "Didn't you hear what I just said?" (Id.) Plaintiff responded with profanity and then refused Defendant's direct order to return to his cell, going instead to the phone. (Id.) Once on the phone, Defendant ordered Plaintiff to get off three times and Plaintiff refused until he was done with his conversation. (Id.) Plaintiff then ignored Defendant's numerous orders to "lock in his cell" and it was not until Officer Eagle came on the pod that Plaintiff was finally secured. (Id.)

At his hearing, Plaintiff pled not guilty to all charges claiming that Defendant was lying because the two had personal problems. (Id. at 4.) Although Plaintiff requested Officer Eagle as a witness, the hearing examiner determined that the witness was not needed to establish guilt or innocence. (Id.) Plaintiff also requested the assistance of Captain Haywood, which the hearing examiner denied because Plaintiff understood the English language and the charges against him. (Id.) The hearing examiner found Defendant's written misconduct report to be more credible than Plaintiff's denial and found that the preponderance of the evidence established that Plaintiff refused an order to return to his cell, using the phone instead. (Id.) Plaintiff was found guilty of refusing to obey an order but the remaining charges were dismissed. (Id.) He was sanctioned to 30 days disciplinary custody time. (Id.) The finding of guilt and resulting sanction was affirmed on appeal to the Program Review Committee and was never overturned. (Id. at 7.) Officer Eagle later corroborated Defendant's version of events supporting the misconduct charge for which Plaintiff was found guilty. (ECF No. 73-1 at 2-4.)

The evidence presented was sufficient to support the hearing examiner's finding of guilt. Plaintiff's unsupported assertion that the charges were fabricated in retaliation for his protected conduct is insufficient to create a genuine issue of fact for trial.  See Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991) (noting that a party resisting summary judgment may not rest on mere allegations, general denials, or vague statements); Toussaint v. Good, 335 F. App'x 158, 161 (3d Cir. 2009) (by pointing to nothing undermining the defendants' evidence, the plaintiff failed to establish a genuine issue as to whether the defendants would have issued the misconduct reports regardless of his filing of grievances).  Additionally, the affidavit of another inmate regarding collateral disciplinary proceedings unrelated to Plaintiff is insufficient to create a material issue of fact regarding Plaintiff's purported innocence of the misconduct.[4]  Moreover, any argument implicitly made by Plaintiff that the misconduct was false solely because the record evidence suggests that Defendant was going to issue him a false misconduct a year earlier is not sufficient to establish a material question of fact as to whether the June 9, 2010 misconduct was, in fact, fabricated.  The same holds true for Plaintiff's argument that, prior to the misconduct at issue, he had not had a misconduct against him in thirteen years.

While it is clear that the parties had their differences, and, in hindsight, should have avoided one another, the evidence of record is sufficient to support a finding of guilt.  Moreover, the misconduct plainly served a penological purpose – *i.e.*, to maintain order and security.  Thus, Defendant has demonstrated that the misconduct would have been issued for reasons reasonably related to legitimate penological interests even absent Plaintiff's filing of grievances and complaints.  See Alexander v. Fritch, 396 F. App'x 867, 873 (3d Cir. 2010) (holding that

---

[4] Plaintiff submitted the affidavit of inmate George S. Bussinger who attests that he was found guilty on a misconduct charge for possessing documents deemed to be contraband despite the fact that the documents were later found not to be contraband and returned to him. (ECF No. 69-1.)

"because there was evidence to support the hearing examiner's finding of guilty, there was a legitimate penological reason for the charge and punishment"); Fortune v. Hamberger, 379 F. App'x 116, 121 (3d Cir. 2010) (affirming summary judgment on retaliatory transfer claim because there was sufficient uncontroverted evidence presented that the transfer occurred due to inmate's history of assaultive behavior and poor prison adjustment; thus, there was a legitimate penological reason for the transfer); Adams v. Hunsberger, 262 F. App'x 478, 482 (3d Cir. 2009) (because the plaintiff's misconduct charge was supported by the evidence, defendants could establish that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest); Romansky v. Stickman, 147 F. App'x 310, 312 (3d Cir. 2005); Carter, 292 F.3d at 159 (affirming summary judgment in favor of defendants on retaliation claim where "the quantum of evidence" of the prisoner's misconduct showed that he would face disciplinary action notwithstanding his protected activity). Consequently, Defendant is entitled to summary judgment as to Plaintiff's retaliation claim. An appropriate order follows.

**AND NOW** this 6th day of December, 2012;

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment filed by Defendant Sergeant Matthews (ECF No. 43) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

_____

Lisa Pupo Lenihan
Chief United States Magistrate Judge

cc:  Gregory Jordan
     1143 Mellon Street
     Pittsburgh, PA  15206
     *Via U.S. Postal Mail*

     Counsel of Record
     *Via ECF Electronic Mail*